IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action: 1:21-cv-689

| | | |
|---|---|---|
| **DREAMA CATLETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **ecc NC, LLC d/b/a** | ) | |
| **eyecarecenter** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff, Dreama Catlett, complaining of defendant, alleges the following:

**JURISDICTION AND VENUE**

1. Plaintiff has instituted this action pursuant to: (a) the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*. and (b) the public policy of North Carolina, N.C. Gen. Stat. § 143-422.2. Plaintiff seeks declaratory and injunctive relief to recover damages for the violation of her protected rights. Jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 2617(a), 28 U.S.C. § 1331, and the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

1

2. Plaintiff resides in, the acts complained of occurred within, and defendant transacts business in the Middle District of North Carolina. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

**PARTIES**

3. Plaintiff, Dreama Catlett, is a resident of Forsyth County, North Carolina. At times pertinent to this action, plaintiff was an "employee" of defendant within the meaning and definition of the FMLA, 29 U.S.C. §2611(3) and the common law of North Carolina.

4. Defendant ecc NC, LLC d/b/a eyecarecenter is a limited liability corporation established pursuant to the laws of the State of North Carolina. Upon information and belief, at times pertinent to this action, defendant ecc NC, LLC was the "employer" of plaintiff within the meaning and definition of the FMLA, 29 U.S.C. §2611(4) and the common law of North Carolina.

**FACTS**

5. Winston Eye Associates initially employed plaintiff in November of 1991 at their location in Winston Salem. Plaintiff worked as an optical assistant.

6. In approximately 2017, defendant purchased and assumed control of Winston Eye Associates and continued plaintiff's employment. At this time, defendant changed plaintiff's job title to an optician.

7. From the beginning of her employment with Winston Eye Associates, continuing with defendant, and until her termination, plaintiff consistently

performed at a superior level, meeting or exceeding all reasonable and legal expectations of defendant.

8. In October of 2017, plaintiff was diagnosed with hematologic malignancy, with a JAK2-positive Essential Thrombocythemia and associated myelofibrosis of the bone marrow (myelofibrosis), a type of blood cancer.

9. Plaintiff's diagnosis is a rare disorder in which abnormal blood cells and fibers build up in the bone marrow.

10. Myelofibrosis is a physical impairment that substantially limits her major life activities and impairs a major bodily function.

11. Myelofibrosis limits her immune system, normal cell growth, and circulatory functions as defined by 42 U.S.C. § 12102(2)(B).

12. Myelofibrosis is an illness that involves continuing treatment by a health care provider, as described below, requires treatment of monthly bloodwork and office visits to monitor her blood and/or bone marrow cancer as defined by 29 C.F.R § 825.113(a).

13. To treat her cancer, plaintiff is required to take a chemotherapy drug, called hydroxyurea, to stop the spread of cancer in her body.

14. In addition, plaintiff's cancer treatment required her to have bloodwork drawn every four weeks and follow ups with her cancer physicians every six months to monitor her blood cancer and prevent the spread of cancer in her body.

3

Case 1:21-cv-00689-NCT-LPA   Document 1   Filed 09/03/21   Page 3 of 12

15. On or around October of 2017, plaintiff informed defendant employer of her cancer diagnosis and the need to take time off work for blood draw appointments and appointments with her treating physicians. Plaintiff would notify defendant's office manager of her monthly bloodwork visits.

16. Specifically, plaintiff reported the diagnosis to defendant's office manager. She thanked plaintiff and authorized plaintiff to use unpaid time off to cover any absences caused by her myelofibrosis.

17. These requests for time off of work served as plaintiff's requests for an accommodation of time off and a request for protected family medical leave.

18. Plaintiff would notify her office manager of her monthly bloodwork visits verbally. In addition, plaintiff would write her expected absence on a paper calendar located in defendant's lab.

19. Plaintiff would write "BLOOD" or words to that effect in capital letters on the paper calendar to inform defendant of her need to take time off for her blood work.

20. Plaintiff was not made aware of a need to submit any additional FMLA certification nor was any additional certification requested.

21. Between October 2017 and January 2019, plaintiff and her medical providers were able to successfully manage her blood cancer with medication so that she was able to work on a regular basis and only miss a minimal amount of time

4

from work for her monthly bloodwork visits, symptoms from her chemotherapy drugs, and her biannual visits with her cancer doctors.

22. Plaintiff missed work as needed, and defendant had approved her FMLA and accommodation requests.

23. In 2019, defendant hired a new office manager who objected to granting plaintiff her previously approved time off work for her disability and serious medical condition.

24. In May of 2019, defendant's office manager issued plaintiff a written warning regarding plaintiff taking time off from work, as a side effect of her chemotherapy medication and taking time off from work to attend her bloodwork appointments.

25. Plaintiff objected to this "write-up" and said that time off was necessary for a serious medical condition. Plaintiff renewed her request for an accommodation of time off to attend her bloodwork appointments and a request for protected family medical leave.

26. Defendant's office manager said that plaintiff was required to use her accrued paid time off (PTO) in order to attend her appointments. Plaintiff reported to defendant that she would instead take time off as unpaid medical leave.

27. Defendant's office manager did not object to plaintiff's request.

5

28. In September of 2019, plaintiff wrote "BLOOD" in all capital letters on a paper calendar in defendant's lab, as she had been doing (or writing words to similar effect) since October of 2017.

29. Plaintiff wrote "BLOOD" on September 9, 2019, on the calendar to notify defendant that she was taking time off work on September 9, 2019, to have bloodwork drawn for her blood cancer treatment.

30. Plaintiff received no response approving the request for time off, denying the request, nor seeking additional clarification for plaintiff's request for time off on September 9, 2019. Plaintiff was not made aware of a need to submit any additional FMLA certification nor was any additional certification requested.

31. Defendant did not submit any proposed accommodations to plaintiff or even attempted to engage in the interactive process in response to plaintiff's request for time off.

32. On September 9, 2019, plaintiff attended her bloodwork appointment and subsequently proceeded to work.

33. When plaintiff returned to the office, she went into the kitchen and said good morning to the office manager.

34. Plaintiff worked the remainder of her shift until around 5:00 when the office manager asked to meet with plaintiff after work.

35. After work, the office manager informed plaintiff that she was being terminated because the office manger did not know plaintiff's "whereabouts" the morning of September 9, 2019.

36. Plaintiff was escorted to pack up her items and was escorted out of the office.

37. After her termination, plaintiff filed a complaint with the US Department of Labor Wage and Hour Division for violations of her federally protected rights.

38. Defendant, upon being notified by plaintiff that she had exercised her right to FMLA leave, refused to reconsider its termination decision or investigate plaintiff's claim that she was exercising a federally protected right to FMLA leave previously approved by defendant.

39. Defendant, upon being notified that plaintiff was seeking reinstatement due to the violation of her federally protected right to FMLA leave, refused and failed to communicate with plaintiff regarding her FMLA rights or right to reinstatement.

40. Defendant, upon being notified that plaintiff suffered from a disability that entitled her to a reasonable accommodation of intermittent leave, failed to engage in an interactive process with plaintiff to determine if the employer and

7

employee could agree on how much leave was a reasonable amount of leave without posing an undue burden on the employer.

41. Upon being notified that plaintiff suffered from a disability that entitled her to a reasonable accommodation, defendant failed to engage in the interactive process to determine if there were other reasonable accommodations available to plaintiff.

42. With knowledge that plaintiff suffered from a disability that entitled her to a reasonable accommodation, defendant terminated her employment rather than provide a reasonable accommodation, informing plaintiff that they did not know plaintiff's "whereabouts."

## FIRST CLAIM FOR RELIEF
**Violation of the FMLA**

43. Plaintiff hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

44. At all times pertinent to this action, plaintiff was an "eligible employee," as defined in 29 U.S.C. § 2611(2), entitled to the benefits and protection of the FMLA.

45. At all times pertinent to this action, plaintiff suffered from a "serious health condition" as defined by 29 USC § 2611(11).

8

Case 1:21-cv-00689-NCT-LPA   Document 1   Filed 09/03/21   Page 8 of 12

46. The FMLA, 29 USC § 2612(a)(1), requires that an "eligible employee" with a "serious health condition," receive protected leave up to 12 weeks per year.

47. The FMLA, 29 USC § 2612(b)(1), requires that an "eligible employee" with a "serious health condition" be permitted to take protected leave intermittently when medically necessary.

48. Employers cannot use the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c).

49. When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. 29 C.F.R. § 825.302(c).

50. Due to her serious health condition of myelofibrosis, a type of blood cancer, plaintiff was compelled to request intermittent leave.

51. Pursuant to the FMLA, 29 USC § 2613 and 29 C.F.R. § 825.302(c), plaintiff gave defendant proper notice of her need for and entitlement to intermittent leave. Her leave was approved by defendant before the new office manager revoked approval.

52. Defendant discriminated against, interfered with, and retaliated against plaintiff for exercising her right to intermittent leave under the FMLA by terminating her employment and by failing to restore plaintiff to her position or a comparable position upon her request to return to work.

53. Defendant used plaintiff's intermittent leave as a negative factor against plaintiff in terminating plaintiff's employment.

54. As a proximate result of defendant's interference and retaliation with plaintiff's rights under the FMLA, plaintiff has suffered substantial damages and is entitled to reinstatement, compensatory damages, interest, liquidated damages, and reasonable attorneys' fees and costs, pursuant to the FMLA, 29 U.S.C. § 2617.

## SECOND CLAIM FOR RELIEF
### Wrongful Discharge in Violation of the Public Policy of North Carolina

55. Plaintiff hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

56. It is the public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.2, to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of handicap (disability) by employers that regularly employ 15 or more employees.

57. At all times relevant to this action, defendant regularly employed 15 or more employees in North Carolina.

58. Defendant violated the public policy of North Carolina in its termination of plaintiff's employment because of her disability.

59. As a proximate result of defendant's discharge of plaintiff in violation of public policy, plaintiff has suffered substantial damages, including lost income

and benefits, emotional distress and mental anguish, loss of quality of life and reputation, and other damages to be shown at trial.

60. Defendant engaged in wrongful and egregious misconduct in violation of plaintiff's rights which was willful and deceptive, and evinced an intentional and deliberate or reckless disregard for the rights of plaintiff. Accordingly, plaintiff is entitled to punitive damages in an amount to be determined by the jury.

## PRAYER FOR RELIEF

Plaintiff requests the following relief:

1. To be reinstated to her position with defendant.

2. To recover of defendant back pay and restoration of all benefits.

3. To recover of defendant compensatory damages in an amount determined by the jury.

4. To recover from defendant liquidated damages pursuant to 29 U.S.C. § 2617.

5. To recover of defendant punitive damages in an amount to be determined by the jury.

6. To recover the costs of this action, including reasonable attorneys' fees.

7. To recover pre-judgment and post-judgment interest on all damages awarded herein.

8. This Court enjoin defendant from future violations of the FMLA.

9. This Court grant such other relief as it deems just and proper.

## Request for Jury Trial

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all issues presented herein.

This the 3rd day of September 2021.

                                              Elliot Morgan Parsonage, PLLC.

                                              /s/ Benjamin P. Winikoff
                                              Benjamin P. Winikoff (49625)
                                              Counsel for Plaintiff
                                              426 Old Salem Road
                                              Winston Salem, North Carolina 27101
                                              Telephone: (336) 724-2828
                                              Facsimile: (336) 724-3335
                                              bpwinikoff@emplawfirm.com